KATHERINE ZEHRER, PLAINTIFF-RESPONDENT, v.
CLIFFORD ZEHRER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 19, 1949—Decided January 13, 1950.

Before Judges JACOBS, DONGES and BIGELOW.

*Mr. John C. Stockel,* attorney for and of counsel with plaintiff-respondent, argued the cause.

*Mr. Paul C. Kemeny* argued the cause for defendant-appellant (*Mr. Albert W. Seaman,* attorney).

The opinion of the court was delivered by

DONGES, J. A. D. This is an appeal from a judgment of the Superior Court, Chancery Division.

Plaintiff instituted a suit for separate maintenance, alleging that she was compelled to separate herself from the defendant because of his extreme cruelty and alleging that he refused and neglected to support her. Defendant denied the allegations of the complaint and counterclaimed for divorce on the ground of desertion.

At the hearing, plaintiff testified that during her married life her husband habitually neglected her and was absent from the home practically every evening. His absences created suspicions in her mind. These suspicions were strengthened when she heard rumors concerning her husband and one

Sophie Terpanick. She said she confronted her husband with what she had heard and asked him to give up this other woman. She then testified that he admitted his relationship with the woman but he said he could not give her up because "it had gone all the way."

Plaintiff also testified that she became disturbed because her husband told her he repeatedly watched a woman in the downstairs apartment taking a bath. He did this by peeking through a hole in the floor.

She said that she left her husband on June 29, 1944, because she could not bear his conduct any longer. She said there had been an argument in January or February of that year over a bank book. The bank account was in her name and contained some $4,000. She took the book from its customary place. He told her that unless she returned it, he would give her no more money, and, she testified, he has not given her any. She claims she has used nearly all of the money in that account for medical bills and for living expenses and is at present unable to work because of her health.

There was evidence in the case that although she weighed approximately 160 pounds prior to her separation, she weighs only about 100 pounds now. The court below concluded that her illness was due to her husband's conduct.

Defendant denied all the allegations made by the plaintiff. He claims that plaintiff ceased talking to him after some insignificant quarrel concerning an automobile. He alleges that when he came home on June 29, 1944, she was gone. He admitted, however, that although she had never in the past gone away without informing him, he made no effort to locate her until four days later. He denied he even knew Sophie Terpanick until after his wife left him. He further claims that he attempted to effect a reconciliation, but his wife refused to return. Plaintiff admits a conversation concerning a reconciliation, but she claims the defendant wanted her to live in the room of their son, separate and apart from the defendant. Furthermore, she claims, he still persisted in his refusal to give up the other woman.

The court below dismissed the defendant's counterclaim and awarded separate maintenance to plaintiff in the amount

of $50 per week and ordered defendant to pay a $350 counsel fee. Defendant appeals from this judgment.

It is the duty of a wife to live with her husband at his home and to give him her services and society. From these obligations she is relieved only if she can show that the conduct of her husband was such as will reasonably convince the court that her life or health was in danger, or her life rendered one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband, if continued would have brought about these conditions. *Pinkinson v. Pinkinson,* 92 *N. J. Eq.* 669 (*E. & A.* 1921). However, physical violence need not be shown. *Walsh v. Walsh,* 88 *N. J. Eq.* 368 (*E. & A.* 1917).

It must be remembered that if plaintiff has established, even though it be by her testimony alone, that her husband's conduct was such as to justify her leaving, she is entitled to relief.

This being a maintenance action and not an action for divorce, corroboration of plaintiff's testimony is not necessary, and the relief can be granted on the testimony of plaintiff alone, if there be credible and satisfactory testimony. *Gerhold v. Gerhold,* 109 *N. J. Eq.* 634 (*E. & A.* 1932); *Shore v. Shore,* 96 *N. J. Eq.* 661 (*E. & A.* 1924).

Plaintiff has set up in her testimony a series of incidents which she claims jeopardized her health and well being. She testified to her husband's attitude toward women and his constant refusal to give up the other woman. She also testified to the break-down in her health. If she is to be believed, there is sufficient evidence to warrant the conclusion that her husband's actions amounted to the extreme cruelty necessary to be shown.

Of course, the defendant denies all of the plaintiff's assertions. In such a case, a factual problem is presented for the determination of the trial judge. In the instant case, the judge below specifically stated that after carefully observing the witnesses and their demeanor, he finds that plaintiff's testimony can be relied upon. The credibility of the witnesses is for the trier of the facts. *Mayerson v. Mayerson,*

107 *N. J. Eq.* 63 (*E. & A.* 1930). The findings of fact of the lower court will not be lightly disturbed on appeal. The court below has the distinct advantage of observing the witnesses and has a better opportunity to judge their credibility than the reviewing court. *Rains v. Rains,* 127 *N. J. Eq.* 328 (*E. & A.* 1940).

█ It can not be denied that the court below was justified in finding that the defendant refused or neglected to provide suitably for his wife. There is sufficient testimony to the effect that he gave her no money after the argument concerning the bank book. Even though there was over $4,000 in that account, all but a few dollars have since been expended for medical bills and living expenses, so that she is completely destitute at the present time.

We feel that the judge below was justified in dismissing defendant's counterclaim and in awarding plaintiff separate maintenance and counsel fees.

The judgment under review is affirmed.

BIGELOW, J. A. D. (dissenting). In June of 1944, the plaintiff wife left her husband, the defendant, taking with her the greater part of his savings—$4,488. Four years later she filed her complaint in the present suit, alleging that she had been compelled to leave him by his extreme cruelty. From a final decree in her favor, the husband appeals.

Extreme cruelty, which may be a basis for divorce, pursuant to *R. S.* 2:50–2(c), or may justify a wife leaving her husband, is such conduct as places her life or health in danger, or renders her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife. *Fallon v. Fallon,* 111 *N. J. Eq.* 512 (*E. & A.* 1932); *Bonardi v. Bonardi,* 113 *N. J. Eq.* 25 (*E. & A.* 1933). The wife has the burden of proof. The parties had been married in 1920, 24 years before the separation. The plaintiff testified that "my husband never, never was with me. He was out continuously from the time my baby was born. There was hardly a night he was with me. It was very, very seldom." The child to whom she referred, was born within

a year or so after the marriage. This course of conduct continued for 20 years. She also testified that she listened to the gossip of her sister or of her daughter-in-law about the association of her husband with a woman named Sophie Terpanik; that when she charged her husband with having an affair with the woman, he admitted the fact; that she asked him to give her up and he positively refused. Lastly she testified, "There is a hole in the floor of the cellar downstairs, in the downstairs apartment, and my husband used to go down there repeatedly to watch this woman take a bath. He told me about it. * * * If I said anything, well, he'd say I was just jealous or indifferent or something like that." The foregoing includes all the items of the so-called extreme cruelty. There was no corroboration of any part of the plaintiff's case.

Plaintiff's testimony that through a period of 20 years "my husband never, never was with me" or "there was hardly a night he was with me" was a gross exaggeration. A truer picture of the situation until a year or two before the separation may be glimpsed in the testimony of plaintiff's witness, Mrs. Linden, "We have had many good times together with Cliff (defendant) and his wife and my husband and I." "We used to have weekly visits." "I always thought they were both very contented with one another." Defendant is an iron worker, who, during the war, worked extremely long hours, especially on a job that began in the fall of 1943 and continued into the next summer. In addition, he was financial secretary of his local union. He was frequently away from home until late at night during the last year or so before his wife left. This did not constitute cruelty.

The complaint charges as a specification of the cruelty that drove plaintiff from her home, that "defendant openly and publicly consorted with said Sophie Terpanik in various saloons and taverns in and about Perth Amboy, N. J., and in addition openly displayed himself in company with said woman at seashore resorts and other places of amusement." If this charge had been true, plaintiff could easily have proved it by disinterested witnesses. Instead, she relies solely on her own testimony as to an alleged confession of defendant.

Defendant denies that he was even acquainted with Sophie Terpanik until January, 1945, six months after the separation, and of course he denies the conversation with plaintiff in which he is alleged to have admitted an affair with Sophie.

Defendant maintained the apartment, that had been the family home, until November, 1944. The parties then divided the furniture and defendant went to live with his sister and after another six months he got a room at the Y. M. C. A., where he has since lived. He admits that during the three years preceding the hearing, which would be the years he has been living alone, he has seen Sophie once or twice a week, and we may assume that word of this reached his wife.

The failure of plaintiff even to attempt to prove the specific charges laid in her complaint; her willingness to exaggerate, as demonstrated in her testimony about defendant's absences from home, and her theft of her husband's savings, greatly weaken her credibility. Her unsupported testimony that her husband confessed to her is an insufficient basis for adjudging that he was guilty of adultery.

Plaintiff's testimony of the woman at the bath is far from clear. She only identifies the lady as "this woman." Did she mean Sophie Terpanik? Whose apartment was it to which her husband went, in order to peek? The incident is not mentioned in the complaint. I think no credit can be attached to this part of plaintiff's testimony.

The plaintiff admits that some months before she left her husband, she took the savings bank book from where it was usually kept, and secreted it. When defendant noticed that the book was missing, his wife refused to return it and there resulted a quarrel which the parties never patched up. Then came plaintiff's departure.

The plaintiff did not, in my opinion, prove that her husband was guilty of extreme cruelty and that it was such cruelty that drove her from their home. Furthermore, even if she had cause to leave, she should be awarded nothing until she return or account for the money of his that she took. The decree for separate maintenance should be reversed.